UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

    v.                                                            CASE NO. 5:21-cr-71-GAP-PRL

WENDELL DOYLE GONEY

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, files this memorandum in anticipation of the upcoming sentencing proceedings in this case. In support of the memorandum, the United States offers the following:

**I.**    **Sentencing Guidelines**

The parties agree that the United States Probation Office has correctly calculated the sentencing guidelines applicable in this case. The guidelines call for a recommended sentencing range of between 77-96 months in federal prison, followed by a period of up to 3 years of supervised release. Doc. 88 at ¶¶ 115, 117.

**II.**    **Recommendation of the United States Probation Office**

Having reviewed the defendant's extensive criminal history, overall health, pervasive drug abuse, and long-term mental health issues, the United States Probation Office has recommended a sentence at the low end of the applicable sentencing guidelines—77 months. *Id.* at 41. Following the period of incarceration, they also have recommended a three-year term of supervised release that includes provisions for substance abuse and mental health treatment. *Id.* While the defendant

could be sentenced to up to 10 years in federal prison (*see* 18 U.S.C. § 924(a)(2)), the United States concurs with this recommendation from U.S Probation. Such a sentence would be slightly more than twice the length of the longest of the prison sentences the defendant has served to date. *Id.* at ¶¶ 48, 60, 62.

### III.   18 U.S.C. § 3553(a) factors

*Nature and circumstances of the offense*

The plea agreement in this case contains a detailed summary of the nature and circumstances of the offense of conviction. Doc. 77 at 18-21. The defendant has certified that these facts are true. *Id.* at 15. The Final PSR also contains a similar factual recitation to which the defendant has not objected. Doc. 88 at ¶¶ 10-15.

*History and characteristics of the defendant*

The defendant has one of the most extensive criminal records the undersigned has seen in more than two decades of federal prosecution. The defendant has 34 state arrests, 30 state felony convictions, 14 state misdemeanor convictions, and 18 state criminal traffic convictions. *Id.* at 40. He has received 18 jail sentences and four prison sentences. *Id.* His periods of incarceration have been extensive, including multiple year-long stints in local jails and multi-year state prison sentences. *Id.* at ¶¶ 39, 48, 50, 53, 55-60, 62. Seemingly, the only gaps between the defendant's criminal convictions have resulted from periods of incarceration. He is overqualified for the maximum criminal history category under the guidelines (VI) with a total of 15 criminal history points. *Id.* at ¶ 66. Many of his convictions do not even score

criminal points. Id. at ¶¶ 32-52.

After building this extensive record, and despite any rehabilitative efforts undertaken by state authorities, the defendant now finds himself in federal court with a firearm conviction. This federal gun case, however, is not the defendant's first conviction involving firearms. In 1995, for example, the defendant was convicted of multiple state burglary offenses that included the theft of a rifle. *Id.* at ¶ 39. After serving 17 months in state prison on those convictions, the defendant was convicted again by state authorities in 1999 of possession of a firearm (shotgun) by a convicted felon. *Id.* at ¶ 41. His prior record also includes crimes of violence combined with flight from law enforcement—aggravated assault on a law enforcement officer, resisting a law enforcement officer with violence, and aggravating fleeing or attempting to elude. *Id.* at ¶ 62. He has unresolved warrants for his arrest for past criminal conduct (DUI, Felony Evading) in Tennessee. *Id.* at ¶ 80.

Contributing to this extensive criminal record are two factors the Court should consider in mitigation—(1) the defendant's long history of substance abuse, and (2) the defendant's ongoing mental health issues. *Id.* at ¶¶ 95-107. These two factors surely are intertwined, as the defendant's prolific use of drugs almost certainly contributed to the serious mental health issues he confronts today.

Indeed, the defendant began using alcohol at only eight years of age, eventually drinking a twelve-pack of beer every day prior to his arrest in this case. *Id.* at ¶ 105. In addition to his alcohol abuse, however, the defendant has admitted using marijuana (since age 15), crack cocaine (since age 30), and methamphetamine (since

3

age 48). *Id.* Incredibly, his use of methamphetamine was an apparent attempt on his part to curb his crack cocaine habit. *Id.* Efforts to rehabilitate him through three different treatment programs have not been successful. *Id.* at ¶ 106.

In the midst of his addiction issues, the defendant's mental health conditions arose. They have worsened over time. He now suffers from an unspecified schizophrenia disorder, Bipolar I disorder, and Major Depressive disorder, among other conditions. *Id.* at ¶¶ 100-103. While he is competent to proceed in this case, his restoration to competency took seven months. *Id.* at ¶ 103. Importantly, Bureau of Prisons doctors cautioned that the defendant's competency status remains "contingent on [his] continued compliance with his psychotropic medications." *Id.* When not taking such medications, the defendant previously has demonstrated both anger and paranoia, even telling law enforcement that he "felt like he was going to go off and could possibly hurt someone." *Id.* at ¶ 99.

While neither of these factors offers an excuse for his criminal conduct in this case, they do help to explain why the defendant has continued to regularly violate the law over the last 30-plus years. It is the belief of the undersigned that a 77-month sentence, with a recommendation from the Court for a BOP mental health facility, would provide the defendant with both a structured environment and the necessary medications to aid in his long-term recovery.

### *Seriousness of the offense*

Whenever a convicted felon makes the choice to arm himself with a firearm in the course of committing a crime, the conduct necessarily is serious. Here, the

defendant is a 30-time convicted felon, whose criminal record already includes a conviction for a nearly identical state firearm offense—possession of a firearm by a convicted felon. Doc. 88 at ¶44. Aside from being a convicted felon, the defendant arguably would also be prohibited from possessing a firearm or ammunition in two additional ways—(1) as a person who is an unlawful user of or addicted to any controlled substance (18 U.S.C. § 922(g)(3)), and (2) as a person who has been adjudicated mentally defective (18 U.S.C. § 922(g)(4)). Doc. 88 at ¶¶ 95-107. Neither additional prohibited category, however, would change the sentencing options in this case.

Moreover, as outlined above, the defendant armed himself with a loaded firearm. He discharged it multiple times, destroying a law enforcement drone that was being used in an active, unrelated felony burglary investigation. The combination of a convicted felon discharging a firearm in the direction of law enforcement—while the deputies were conducting a burglary investigation—easily could have had deadly consequences for the defendant, law enforcement, or both. Fortunately, it did not. His conduct did, however, needlessly destroy a valuable drone used by law enforcement in its criminal investigations.

### *Need to promote respect for the law*

The nature of this offense—a felon discharging a loaded firearm—and the defendant's 30-plus year criminal history make it important that the sentence imposed in this case be a substantial one. In fact, the defendant's long-term lack of respect for the law highlights the need for such a sentence.

*Deterrence*

Certainly, the defendant has not been deterred to date in his criminal conduct by the efforts of state authorities in either Florida or Tennessee over the last 30 years. Unfortunately, this history of poor choices likely means that the defendant will again break the law in the future. A sentence of 77 months, however, unquestionably would deter this defendant from committing new criminal offenses in the community for the period of time that he is removed from it.

*Need to protect the public from further crimes of the defendant*

Where the defendant has been paroled or given periods of supervision in relation to his previous convictions, he has not faired well. Indeed, the eight probation sentences he received ultimately resulted in seven revocations (and additional prison time). *Id*. at 40. Moreover, the defendant has an extensive history of mental health issues, including diagnoses of schizophrenia, bipolar disorder, and major depressive disorder. *Id.* at ¶¶ 95-103. These mental health issues are exacerbated by his prolific use of drugs (alcohol, marijuana, crack cocaine, methadone, and methamphetamine). *Id*. at ¶¶ 105-106. As noted above, the breaks in time between the defendant's criminal convictions generally have resulted from his periods of incarceration.

As the defendant has been unable to refrain from these long-term patterns of conduct, a lengthy sentence of imprisonment is necessary to protect the public from him. In this case, a prison term of 77 months followed by three years of supervised release would meet that goal of protecting the public.

*Need to provide the defendant with needed medical care*

The PSR shows that the defendant has adjusted well during periods of incarceration. Perhaps this adjustment is due to the structured environment of the prison setting, the availability of stabilizing medication, and the restricted access to intoxicants, such as alcohol and other assorted controlled substances. Indeed, the defendant has had very few disciplinary reports while incarcerated in state prison. Where disciplinary reports are referenced in the PSR, they often involve relatively minor conduct. *Id*. at ¶¶ 48, 60.

IV. **Restitution**

There is no dispute as to the restitution owed in this case. Doc. 77 at 3. Therefore, the United States requests that the Court enter an order of restitution in the amount of $29,034 payable to the Lake County Sheriff's Office. Doc. 88 at ¶¶ 9, 125. This figure represents the cost of the destroyed law enforcement drone.

V. **Forfeiture**

There is no dispute as to the items to be forfeited. Doc. 77 at 4-5. The United States already has moved the Court for a Preliminary Order of Forfeiture. Doc. 86. The specific items to be forfeited are a Harrington and Richardson, Model 700, .22 caliber rifle, serial number AX453323, and nine rounds of .22 caliber ammunition. Doc. 88 at ¶ 6. The United States respectfully requests that the Court grant its forfeiture motion and include the forfeiture of these items as part of the final judgment in this case.

## VI. Motion to Dismiss Count Two of the Indictment

Pursuant to the plea agreement, the United States will move the Court at sentencing to dismiss Count Two of the indictment pursuant to Fed. R. Crim. P. 11(c)(1)(A). Doc. 77 at 2. Count Two alleges the intentional destruction of an aircraft, an offense punishable by up to 20 years' imprisonment, in violation of 18 U.S.C. § 32(a)(1). Doc. 4 at 3.

## VII. Conclusion

For the reasons outlined above, the United States respectfully requests the Court impose a prison sentence of 77 months, followed by a three-year term of supervised release, with provisions for both drug and mental health treatment for the defendant. The United States further requests the forfeiture of the firearm and ammunition used by the defendant and an order of restitution to the Lake County Sheriff's Office in the amount of $29,024.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   /s/ Robert E. Bodnar, Jr.
Robert E. Bodnar, Jr.
Assistant United States Attorney
Florida Bar No. 0989703
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
Telephone:  (352) 547-3600
Facsimile:  (352) 547-3623
E-mail: robert.bodnar@usdoj.gov

U.S. v. Wendell Doyle Goney                                 Case No. 5:21-cr-71-GAP-PRL

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Joshua Woodard, Assistant Federal Public Defender

I hereby certify that on February 13, 2024, a true and correct copy of the foregoing document and the notice of electronic filing were sent by United States Mail to the following non-CM/ECF participant(s):

N/A

/s/ Robert E. Bodnar, Jr.
Robert E. Bodnar, Jr.
Assistant United States Attorney
Florida Bar No. 0989703
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
Telephone: (352) 547-3600
Facsimile: (352) 547-3623
E-mail: robert.bodnar@usdoj.gov